UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VIKTOR SHEVCHENKO, <br>     Plaintiff, <br> v. <br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br>     Defendant. | No. CV-07-0014-CI <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 19, 22.) Attorney Maureen Rosette represents plaintiff Viktor Shevchenko (Plaintiff); Special Assistant United States Attorney David M. Blume represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment, and orders entry of judgment for Defendant.

**JURISDICTION**

Plaintiff filed applications for disability insurance benefits (DIB) and Social Security Income (SSI) benefits in October 2000, alleging low back pain with left side radiculopathy and chest wall pain. (Tr. 127.) His claim was denied initially and on reconsideration in February 2001. (Tr. 55-57.) Plaintiff reapplied

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

for DIB and SSI in March 2002 (Tr. 24), alleging low back pain and shoulder pain and an onset date of July 30, 1997, or August 2000. (Tr. 171-80.) Benefits were denied initially and on reconsideration in August 2002. (Tr. 61-63.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ R.J. Payne on July 1, 2003. Medical expert Glen Almquist, M.D., testified. (Tr. 721-27.) Supplemental hearings were held on March 1, 2005, at which medical expert Daniel Girzadas, M.D., testified, and on May 6, 2005, at which vocational expert Deborah Lapoint testified. (Tr. 649-727.) Plaintiff, who is from Russia, was present at the hearing and testified through an interpreter. Plaintiff was represented by counsel. Based on new and material evidence, the ALJ reopened the 2000 application; he issued a partially favorable decision on September 8, 2005, finding Plaintiff was disabled from July 1, 2000, to July 1, 2001. (Tr. 24-40.) The Appeals Council denied review. (Tr. 10-12.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the hearing, Plaintiff was 37 years old, was married and had four children. He had completed 12 years of education in Russia and had past relevant work as a metal fabrication helper, machine presser, artificial flower maker, assembler/electrical accessories, electronic assembler, industrial cleaner and boat outfitter. (Tr. 178, 181-87, 687-88.) He last worked in July 2000. (Tr. 128.) He testified he could not work because of pain when he walked and pain in his back and shoulder. (Tr. 662.)

**ADMINISTRATIVE DECISION**

At step one, ALJ Payne found Plaintiff had not engaged in substantial gainful activity since July 1, 2000. (Tr. 38.) At step two, he found Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, status post fusion of L4-5 to L5-S1, and pain in the right shoulder since July 2000. (Tr. 33, 38.) He concluded that from July 1, 2000, until July 1, 2002, Plaintiff had an impairment that met the severity requirements listed in section 1.04A in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings); however, after July 1, 2001, Plaintiff's impairments did not meet or equal the Listings. (Tr. 38.) The ALJ found Plaintiff's allegations regarding the extent of his functional limitations were "not fully credible." (Tr. 34.) At step four, he determined that after July 1, 2001, Plaintiff had a residual functional capacity (RFC) for light exertion, with several non-exertional limitations, including mild to moderate, frequent pain. (Tr. 38.) The ALJ concluded Plaintiff was unable to perform his past relevant work and was unable to communicate in English. (Tr. 39.) Based on vocational expert testimony, the ALJ determined Plaintiff could perform a significant number of other jobs in the national economy, including assembly work. (Tr. 37, 38.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere

scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he (1) improperly rejected the Medical Source Statement opinions of treating physician, Barry Bacon, M.D., and (2) relied on medical expert testimony. (Ct. Rec. 20 at 12-14.) Plaintiff asserts the objective medical evidence supports Dr. Bacon's opinions regarding severity of his limitations, which if credited, would support a disability determination for the entire period at issue. (Id. at 18.)

**DISCUSSION**

Evidence submitted by Plaintiff includes extensive records

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

documenting Plaintiff's diagnoses and treatment for low back pain, shoulder pain and chest wall pain. Dr. Bacon treated Plaintiff from 1997 through July 2005, and referred Plaintiff to numerous specialists in an attempt to identify the source of Plaintiff's ongoing complaints. (Tr. 208-35, 406-09, 438-52, 551-65.) The examining specialists ordered extensive testing and imaging and prepared detailed reports explaining their findings. (*See, e.g.,* Tr. 332, 340, 521, 523, 624.)

Dr. Bacon opined in a Medical Source Statement dated July 1, 2003, that Plaintiff was restricted to lifting and carrying no more than ten pounds occasionally and less than ten pounds frequently; standing and/or walking less than two hours in an eight-hour workday; sitting less than about six hours in an eight-hour workday; and limited pushing and pulling due to right shoulder pain. He also opined Plaintiff could (1) perform postural activities for no more than very brief periods of time due to increase of pain with activity, and (2) perform manipulative functions occasionally due to limitations in strength and sensation.[1] (Tr. 445-47.)

Dr. Girzadas, who testified at the March 1, 2005, hearing, reviewed Plaintiff's entire medical record, including Dr. Bacon's clinical notes, diagnostic testing results and records and reports from the examining medical specialists and agency physicians, and opined Plaintiff retained an ability to lift or carry 20 pounds occasionally, 10 pounds frequently, stand or walk at least two hours

---

[1] "[O]ccasionally" means occurring from very little up to one-third of the time," and "frequent" means occurring from one-third to two-thirds of the time." *Social Security Ruling (SSR)* 83-10.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

in an eight-hour day and sit about six hours in an eight-hour day; pushing and pulling with foot controls would be precluded, but there were no restrictions for the left upper extremity and pushing and pulling on the right side would be limited to 20 pounds with both arms. He found Plaintiff could do ramps and stairs occasionally, but should never climb ropes, ladders or scaffolds, and only occasional balancing, kneeling, crouching, crawling, and stooping. He could reach with the right upper extremity occasionally over shoulder height in all directions; handling, fingering and feeling of the right arm were unlimited, and Plaintiff should avoid hazardous machinery and heights. Dr. Girzadas attributed these limitations to back and chest pain. (Tr. 32, 568-71, 712-13.)

In finding Plaintiff was not disabled after July 2001, the ALJ rejected Dr. Bacon's MSS opinions, which represented an ability to do less than sedentary work,[2] in favor of less restrictive limitations opined by Dr. Girzadas. (Tr. 33-35). He reasoned Dr. Bacon's opinions were not supported by other objective findings in the record and were based on Plaintiff's unreliable self-report. (Tr. 36.)

**A.   Medical Source Opinions**

In a disability proceeding, it is the role of the ALJ to

---

[2] Sedentary work involves lifting no more than ten pounds at a time. It requires an ability to sit for six out of an eight-hour day and to walk and stand not more than two hours in an eight-hour day. *SSR* 83-10. An ability to do less than a full range of sedentary work however, does not necessarily mean a person is disabled. *SSR* 96-6p.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

resolve conflicts in medical evidence. 20 C.F.R. §§ 404.1527, 416.927; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). A treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and supported by medically accepted diagnostic techniques unless it is rejected with "clear and convincing" reasons. *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.

To meet this burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation of the evidence, and make findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. *Id.*

Courts have upheld an ALJ's decision to reject the opinion of an examining physician based in part on the testimony of a non-examining medical advisor. *Lester*, 81 F.3d at 831. The analysis and opinion of an expert selected by an ALJ may be helpful in his adjudication, and the court should not second guess the ALJ's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

resolution of conflicting medical testimony. *Andrews,* 53 F.3d at 1041 (*citing Magallanes,* 881 F.2d at 753.) Further, testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.* If supported by substantial evidence, the ALJ's decision must be upheld, even where the evidence is susceptible to more than one rational interpretation. *Andrews,* 53 F.3d at 1039-40.

Plaintiff contends the ALJ reasons were not adequate to reject Dr. Bacon's opinions, and if credited, would support a finding of "disabled." (Ct. Rec. 20 at 12.) While Dr. Bacon's opinions are important and must be considered, those opinions are contradicted by examining specialists; therefore, they are not controlling. Further, they are not the equivalent of a residual functional assessment (RFC), which is an administrative finding on Plaintiff's ability to perform basic work functions, an issue reserved to the Commissioner. *SSR* 96-5p. Dr. Bacon's Medical Source Statement is one piece of the evidence the ALJ must consider, together with the entire case record, in making his final disability determination. It is the ALJ's responsibility to determine what weight to give to Dr. Bacon's opinions and other medical sources in assessing Plaintiff's ability to perform work; however, as discussed above, specific and legitimate reasons must be given to reject Dr. Bacon's contradicted opinions regarding Plaintiff's limitations. *Andrews*, 53 F.3d at 1039, 1041; *Magallanes*, 881 F.2d at 751. The ALJ does not have to accept opinions that are brief and conclusory and unsupported by clinical findings. *Thomas,* 278 F.3d at 957.

Here, the ALJ fully considered Dr. Bacon's opinions, and gave

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

more weight to reports and the opinions of the specialists to whom Dr. Bacon referred Plaintiff, as well as the interpretive testimony of Dr. Girzadas. (Tr. 35.) His determination is supported reasonably by the record.

Among the specialists who saw Plaintiff after July 2001 were neurologist J. Robert Clark, M.D.; neurosurgeon John J. Demakas, M.D.; orthopedic surgeon, Eugene Pontecorvo, M.D.; and neurologist William Bozarth, M.D. Dr. Clark examined Plaintiff in December 2001, and reported no complaints of upper extremity weakness or paresthesia (numbing, tingling, burning), no evidence of disc herniation and no abnormality of the spine except for the fusion site. (Tr. 332.) After the examination, Dr. Clark concluded Plaintiff was "probably significantly deconditioned" and not capable of much physical activity at that time. He recommended supervised rehabilitation of the spine. (Tr. 334-35.)

Dr. Demakas performed lumbar spine fusion surgery on Plaintiff in February 2001. After an August 2001 examination, Dr. Demakas opined Plaintiff could not return to his prior work of laying floors, but reported Plaintiff did not have "any specific restrictions as far as lifting," and should be able to lift 20 pounds. (Tr. 339.) He examined Plaintiff in March 2002 and reported x-rays showed the interbody cages in good position without complication and unchanged from previous studies. He ordered a bone scan to determine if there were areas of inflammation to account for Plaintiff's complaints of pain. (Tr. 340-42.) The bone scan in April 2002 showed some degenerative disc disease at the fusion site, but no inflammation or significant abnormality was indicated. (Tr.

343.)

In October 2002, Dr. Pontecorvo found no significant objective neurological abnormalities and no evidence of atrophy anywhere in his exam of Plaintiff, despite Plaintiff's claimed inability to do range of motion tests because of pain. (Tr. 410.) Dr. Pontecorvo also noted that MRI imaging results showed mild impingement at the shoulder that should resolve with physical therapy. (Id.)

In August 2004, Dr. Bozarth completed a thorough exam and reported Plaintiff's complaints were inconsistent with objective findings and Plaintiff's behavior during the exam. (Tr. 541-42.) Specifically, Dr. Bozarth noted Plaintiff demonstrated "marked diminution in range of motion of the right shoulder" even though the shoulder was normal in many of the prior evaluations; he also remarked that Plaintiff demonstrated more ability to move when he spontaneously adjusted his gown on his shoulder than he demonstrated on exam. (Tr. 542.) Dr. Bozarth also noted that Plaintiff's upper extremities did not show significant asymmetry in girth or atrophy of the shoulder girdle. (Tr. 539, 542.) Dr. Bozarth concluded Plaintiff could function in a sedentary to light duty capacity with the ability to change position as needed, and limited in lifting and bending. (Tr. 542.)

Upon referral from Dr. Bacon, Dr. Clark examined Plaintiff again in June 2005 and administered nerve conduction tests to identify the reasons for Plaintiff's complaints. (Tr. 624-25.) He noted Plaintiff showed normal strength in his lower extremities without localized atrophy. The nerve conduction tests were within normal limits and, significantly, showed "no evidence for motor

nerve root injury or axonal loss or other chronic motor unit change in the L2 through S2 distribution in either lower extremity." (Tr. 625.) There was no evidence of peripheral or sciatic neuropathy in either lower extremity. (Id.) An electroencephalogram also was administered, based on Plaintiff's complaints of shaking and numbness in his arms, legs and left face; the results were normal. (Tr. 627.)

At the March 2005 hearing, Dr. Girzadas gave extensive testimony and summarized the medical record in its entirety, including the significant number of specialized diagnostic tests and imaging reports. (Tr. 705-11.) Based on the examining specialists records, he concluded Plaintiff met Listing 1.04(a) from July 2000 to July 2001; thereafter, the diagnostic reports did not support a Listing or an inability to do work activities. (Tr. 711-12.)

An examining physician's opinion that contradicts a treating physician's opinion is considered substantial evidence if the examining physician's opinion is based on independent clinical findings from objective testing that differ from treating physician findings. *Orn v. Astrue*, ____ F.3d ____, No. 05-161181, 2007 WL 2034287 (9th Cir. July 16, 2007). As discussed above, Dr. Girzadas's opinions are supported by the numerous reports from the examining specialists and diagnostic testing over the relevant years that generally were within normal limits and showed no significant abnormalities. (*See, e.g.,* Tr. at 227, 235, 262, 269, 305, 315, 320, 325-28, 341-44, 348, 361-69, 423, 442, 472-74, 477, 482, 489, 559-64, 637-39, 642-44.)  In addition, as stated in the Commissioner's regulations, these specialist opinions generally are

given more weight in evaluating medical evidence than opinions from non-specialists.  *See* 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5).

The ALJ's did not err in giving more weight to the examining specialists' opinions, which were based on substantial objective evidence.  Dr. Girzadas's opinion that Plaintiff's limitations were less restrictive than those set forth in Dr. Bacon's Medical Source Statement is, therefore, supported by substantial evidence in the entire record.  The ALJ did not err in relying on Dr. Girzadas's testimony.

**B.   Credibility**

Although Plaintiff does not challenge the ALJ's credibility findings, he appears to argue that unreliable self-report is not a sufficiently specific and legitimate reason to reject his treating source's opinions.  He contends that Dr. Bacon's more restrictive limitations were based on more than self-report; therefore, the ALJ's rejection of those limitations was error.  (Ct. Rec. 20 at 15.)

As discussed above, the ALJ reasonably gave more weight to medical evidence of less restrictive limitations than those opined by Dr. Bacon.  Even where, as here, a claimant introduces medical evidence showing that he has an ailment expected to produce some pain, an ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423 (d)(5)(A). Many medical conditions produce pain, but not all are severe enough to preclude gainful employment.  *Fair*, 885 F.2d at 603. Further, it is well settled that among the appropriate reasons for rejecting a

treating doctor's opinions is evidence of a claimant's unreliable self-report. *See Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604 (conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints recognized as appropriate reasons for rejecting treating source opinions).

However, an adjudicator "may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence."  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).  Thus, where a case turns on the reliability of a claimant's allegations of pain, credibility findings are critical.  Absent evidence of malingering, the ALJ must give "clear and convincing" reasons to discount Plaintiff's pain testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Here, the ALJ gave very specific reasons for finding Plaintiff not credible: Plaintiff was able to work at substantial gainful activity until July 2000, inconsistent with his claims of almost total incapacity; he reported that he had been fighting a fire in October 2001; he reported household activities inconsistent with total disability; there were inconsistencies between emergency room and physical therapy reports and his stated incapacity; and Drs. Bozarth and Pontecorvo's observed no evidence of atrophy, despite Plaintiff's claims of inactivity. (Tr. 35.)  In addition, as discussed above, the ALJ findings that the severity of Plaintiff's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

complaints was inconsistent the reports of the many specialists who examined Plaintiff are amply supported by the record. These are "clear and convincing" reasons to discount Plaintiff's self-report of total disability. Combined with the specialist's opinions of less restrictive limitations and the lack of objective findings to explain the degree of pain alleged, the ALJ's credibility findings are sufficient to reject Dr. Bacon's opinions of severe limitations. *Thomas*, 278 F.3d at 959.

**CONCLUSION**

The record viewed in its entirety supports Dr. Girzadas's opinions and reasonably supports the ALJ's rejection of Dr. Bacon's Medical Source Statement opinions. The ALJ's determination that Plaintiff is able to perform a significant range of light and sedentary work is based on substantial evidence and free of legal error. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 19)** is **DENIED**.

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 22)** is **GRANTED;**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED November 2, 2007.

                     S/ CYNTHIA IMBROGNO
                UNITED STATES MAGISTRATE JUDGE